IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FREDERICK G. FISCHER, JR.          :          CIVIL ACTION
                                   :
          v.                       :
                                   :
CARPENTERS PENSION AND ANNUITY     :
FUND OF PHILADELPHIA AND           :
VICINITY                           :          NO. 10-3048



## MEMORANDUM

Padova, J.                                              **August 5, 2011**

Plaintiff Frederick G. Fischer, Jr. filed this action against his pension plan, Defendant

Carpenters Pension and Annuity Fund of Philadelphia and Vicinity, asserting that Defendant

improperly terminated his Supplemental Pension payments due to his collection of Social Security

disability benefits. He asserts claims under the Employment Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and the Americans with Disabilities Act (the "ADA"),

42 U.S.C. § 2000e-5 et seq. The parties have filed cross-motions for summary judgment. We held

argument on the Motions on July 13, 2011. For the following reasons, we grant summary judgment

in Defendant's favor on all of Plaintiff's claims, except the ERISA claim that Defendant breached

its fiduciary duties to Plaintiff. On that claim, we find there to be genuine issues of material fact that

prevent the entry of judgment in either party's favor.

## I.    BACKGROUND

The following facts are undisputed. Plaintiff joined the Carpenters' Union in 1965, and is

a participant in the Carpenters Pension and Annuity Fund of Philadelphia and Vicinity. (Plaintiff's

Statement of Material Facts ("Pl. Stmt")[1] at ¶¶ 1-2; Defendant's Statement of Undisputed Material

---

[1]Defendant complains that Plaintiff includes no record citations in his Statement of Material
Facts, but it nevertheless admits certain facts in its response to the Statement.

Facts ("Def. Stmt") at ¶ 2.) Plaintiff chose to take early retirement in 1999, and began receiving monthly pension benefits from the Plan effective June of that year. (Pl. Stmt ¶ 2; Def. Stmt ¶ 3; Appx. 49.) His benefits included both an Early Retirement Pension and a temporary Supplemental Pension payment.[2] (J. Obuchowicz Decl. ¶ 10.)

Prior to receiving benefits, Plaintiff met with Pension Fund staff in their offices and completed an application for benefits. (Def. Stmt ¶ 5.) On May 5, 1999, in connection with his pension application, Plaintiff signed a form entitled "Pension and Health Welfare Regulations Government Participants Applying for Retirement with the Carpenters' Pension Plan." (Appx. 57.) The form, which Plaintiff signed, advised Plaintiff that "No Retired Member can be employed in any capacity [in the Construction Industry], for more than 40 hours in any one month without Suspension of Benefits." (Id.) There is no signed form in the record indicating that Plaintiff was advised that his Supplemental Pension payments could also be suspended if he began receiving Social Security disability benefits.

In July 2004, following his retirement, Plaintiff became eligible to receive Social Security disability benefits. (Pl. Stmt ¶ 7.) On November 23, 2004, the Social Security Administration sent Plaintiff a Notice of Award, which advised him that he would receive as a lump sum disability benefits for July 2004 through October 2004, and then would receive $1,774.00 in disability benefits for each month thereafter. (Appx. 29.)

In each of the years 2005, 2006 and 2007, Plaintiff completed and returned to Defendant a "Certificate of Right to Receive Pension." (Appx. 14, 16.) Each year, the form certificates, on

---

[2]At the time his benefits were terminated in 2008, Plaintiff was receiving an Early Retirement Pension of $1,752.46 each month, as well as a Supplemental Pension in the same amount, for a total monthly payment of $3,504.92. (See Appx. 9, 18)

which Plaintiff's name and address were preprinted, provided as follows:

> I state: (1) I am the same person named on this statement who is receiving a Pension from the Carpenters' Pension & Annuity Fund of Philadelphia; (2) I have read the Fund notice on Rules Regarding Post-Retirement Employment and continue to qualify for receipt of Pension Benefits in accordance with the applicable provisions of the Carpenters' Pension & Annuity Plan regarding work after retirement, and (3) I have not and am not receiving a Social Security Disability Benefit Check while receiving (if applicable) my Carpenter Supplemental Payment.

(Appx. 14, 16.)   Plaintiff signed each certificate, and returned each to Defendant, thereby representing on each occasion that he was "not receiving a Social Security Disability Benefit Check."

(Id.)

On May 9, 2008, Defendant sent a letter to Plaintiff stating that it was "recently informed that [Plaintiff was] receiving a Social Security Disability Award." (Appx. 17.)  Defendant requested that Plaintiff send it a copy of his award letter, along with the date he first became eligible to receive the award.  (Id.)   In June 2008, Defendant confirmed that Plaintiff was eligible for and had been receiving Social Security disability benefits. (Def. Stmt ¶ 13.)  By letter dated June 25, 2008, Defendant notified Plaintiff that his Supplemental Pension benefit was terminated. (Def. Stmt ¶ 14; Appx. 18-19.)   It enclosed with the letter "the language of Section 3.04 . . . of the Carpenters Pension and Annuity Plan of Philadelphia & Vicinity" (Appx. 18), which stated as follows:

> **Section 3.04 Carpenter's Supplemental Pension Payment.** Each Active Vested Participant who commences to receive an Early Retirement Pension pursuant to Section 3.03 of the Plan prior to the first day of the month following the month in which his 62nd birthday occurs shall be eligible to receive a Carpenter's Supplemental Pension Payment payable on the first day of the month as of which such active Vested Participant commenced to receive his Early Retirement Pension and on the first day of each month thereafter, to but not including the earliest of the following four dates:

3

(1)     The first day of the month following the month in which such Participant's 62nd birthday occurs.

(2)     The first day of the month following the month in which the death of such Participant occurs.

(3)     If such Participant becomes entitled to a disability pension from social security, the first day of the month as of which such Participant becomes so entitled.

(4)     If such Participant's pension payments, payable pursuant to Section 3.03 of the Plan, are suspended pursuant to Section 3.06 of the Plan, the first day of the month as of which such Vested Participant's payments under Section 3.03 are suspended, in which event his entitlement to Carpenter's Supplemental Pension Payments will be canceled and he will receive no further such payments at any time in the future.

The amount of each Carpenter's Supplemental Pension Payment shall be equal to a percentage of such Participant's Accrued Monthly Pension determined as of the date he ceased to be an Active Participant. If such Active Vested Participant had completed 30 years of Credited Service at the time he ceased to be an Active Participant, such percentage shall be 100%, otherwise such percentage shall be 100%, minus ½ of 1% times the number of months in the period from the date of his pension payments commence to the first day of the month following his 62nd birthday.

(Appx. 20.) This language appears to be excerpted from the "Carpenters Pension and Annuity Plan Of Philadelphia and Vicinity, as Amended and Restated Effective May 1, 2002" (the "2002 Plan"), as it is identical in all respects to the language in the 2002 Plan. (Appx. 224-25; see infra, n.3.) Defendant further advised Plaintiff in the June 25, 2008 letter that it had overpaid him by $82,120.98, which was the amount that the Plan had paid him in Supplemental Pension payments between July 2004 and June 2008. (Def. Stmt ¶ 14; Pl. Stmt ¶ 9; Appx. 18.)

On July 14, 2008, Plaintiff appealed Defendant's determinations that he was no longer

4

entitled to Supplemental Pension payments and that he had been overpaid for such benefits. (Def. Stmt ¶ 16; Appx. 21.) In a handwritten letter commencing his appeal, Plaintiff stated that he "would like to be able to review the files of the plan in connection with the preparation of an appeal." (Appx. 21.) On August 10, 2008, counsel for Plaintiff sent a letter to Joseph Obuchowicz, the Pension Plan manager, stating that he would be forwarding an authorization from Plaintiff enabling counsel to obtain "his records as well as all files associated with the Plan . . . as they relate specifically to [Plaintiff]." (Appx. 22.) Nineteen days later, on August 29, 2008, Mr. Obuchowicz forwarded to counsel Plaintiff's pension file and the 2002 Plan. (Appx. 24.)

On September 16, 2008, counsel filed Plaintiff's formal appeal and an accompanying Memorandum of Law, in which he argued, among other things, that the 2002 Plan did not govern Plaintiff's rights, because it specifically stated that it was only "effective . . . as to persons who retire or otherwise terminate employment covered by the Plan on or after [May 1, 2002]." (9/16/08 Ltr., attached as Ex. H to Plaintiff's Complaint; Appx. 61, 205.) On September 24, 2008, the Pension Plan's Board of Trustees denied Plaintiff's appeal. (Def. Stmt ¶ 18; Appx.79-80.) Plaintiff's counsel again wrote to Mr. Obuchowicz on October 17, 2008, asserting that "the Section 3.04 set forth in the initial [denial] letter does not apply to [Plaintiff] as is set forth more fully in [his Memorandum of Law on appeal]." (Appx. 81.) Plaintiff's counsel requested that Defendant now send to him "every version of the subject Pension Plan and all amendments thereto from its inception to the present." (Id.) Plaintiff's counsel sent a follow-up request on November 3, 2008. (Appx. 83 ("[P]lease forward the documents requested in our [October 17, 2008] letter.").) Judith Sznyter, counsel for the Pension Plan, responded in a letter dated November 19, 2008, that Defendant had already provided counsel "with all relevant documents" and that she failed to see the relevance of

"all prior plans." (Appx. 86-87.)

Plaintiff commenced the instant action in June 2010. At a conference with the Court on September 16, 2010, Plaintiff again argued that Defendant's reliance on the 2002 Plan was improper because the 2002 Plan applied only to individuals who retired on or after May 1, 1992. Following the conference, we issued an order requiring Defendant to produce to Plaintiff a copy of the Pension Plan that was in effect when Plaintiff elected early retirement. (9/16/10 Ord., Docket No. 7.) Thereafter, Defendant produced to Plaintiff "The Carpenters Pension and Annuity Plan Of Philadelphia and Vicinity, As Amended and Restated Effective May 1, 1989 (With All Amendments Adopted Through April 2, 1996)" (the "1996 Plan"). (Appx. 88.) The language in Section 3.04 of the 1996 Plan is identical to the Section 3.04 language that Defendant cited as the basis for its termination of Plaintiff's benefits in its June 25, 2008 letter.[3] (Appx. 106-07; Appx. 20.)

Plaintiff now asserts four claims against Defendant.[4] First, he claims that Defendant violated ERISA, 29 U.S.C. § 1132(c)(1), by repeatedly failing to produce to him the 1996 Plan, which set forth his rights and responsibilities in connection with his pension, instead producing only the 2002 Plan, which did not apply to him. Second, Plaintiff brings a claim pursuant to 29 U.S.C. § 1132(a)(1)(b) that Defendant's suspension of Supplemental Pension payments due to his collection of Social Security disability payments was both arbitrary and capricious and in violation of Erisa's nonforfeitability provision, 29 U.S.C. § 1053(a), because it was grounded on a provision in the 2002

---

[3] The only difference between Section 3.04 in the 1996 Plan, and Section 3.04 the 2002 Plan is that the 2002 Plan capitalizes "participant" in the numbered paragraphs while the 1996 Plan does not.

[4] Plaintiff initially asserted four additional claims pursuant to state law, but he has since withdrawn those claims. (N.T. 7/13/11, at 29-30; 7/14/11 Ord., Docket No. 23.)

Plan, which did not apply to him, and because it deprived him of vested rights. Third, Plaintiff claims that Defendant breached its fiduciary duty to him by failing to advise him at the time he opted for early retirement that his Supplemental Pension payments would be terminated if he began receiving Social Security disability benefits, in violation of ERISA, 29 U.S.C. § 1132(c)(3). Fourth, he claims that Defendant discriminated against him on the basis of his disability when it terminated his Supplemental Pension payments on account of his receipt of Social Security disability benefits, in violation of the ADA, 42 U.S.C. §§ 12112(a) and § 12132. In connection with each claim, Plaintiff seeks "compensatory damages in a sum in excess of $82,120.98," as well as attorneys fees. Both parties have moved for summary judgment on all claims.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that

7

a fact is genuinely disputed] by:  (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute . . . ."  Fed. R. Civ. P. 56(c)(1).  Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

## III.   DISCUSSION

Defendant has moved for summary judgment on all claims, arguing that Plaintiff has not established that it violated § 1132(c) by failing to produce the 1996 Plan in response to a written request for that plan; that its termination of his Supplemental Pension payments was dictated by the Plan documents and fully consistent with ERISA; that the summary judgment record conclusively establishes that Plaintiff was notified that his Supplemental Pension payments would be terminated if he received Social Security disability benefits; and that termination of his Supplemental Pension payments did not violate the ADA as a matter of law.  Plaintiff, in his Motion, maintains that Defendant violated ERISA by failing to provide him with the 1996 Plan upon his request;[5] that Defendant's termination of his Supplemental Pension payments was arbitrary and capricious and in violation of ERISA's nonforfeitability provision; that the record evidence conclusively establishes that Plaintiff was not notified that his Supplemental Pension payments would be terminated if he

---

[5]At times, Plaintiff articulates his claim more generally, as one that "Defendant failed and refused to provide [him] with information and documentation needed to assess, prepare and prosecute [his] Appeal from Defendant's denial of benefits."  (Pl.'s Mot. for Summ. Judg. at 4.)  However, his Motion for Summary Judgment ultimately makes clear that his primary complaint is that Defendant "failed and refused to forward the version of the subject Plan that was in effect at the time Plaintiff entered into his Early Retirement Agreement," which is the 1996 Plan.  (Id. at 8.)

received Social Security Disability benefits; and that termination of his Supplemental Pension payments constituted disability discrimination in violation of the ADA.

### A.     ERISA Claim for Failure to Produce Documents

Plaintiff's claim for failure to produce documents arises under § 1132(c)(1) of ERISA. Under § 1132(c)(1), a pension plan participant may bring a civil action to obtain statutory penalties of up to $100 day, and other relief that a court deems appropriate, when the participant requests information from the pension plan administrator that "the subchapter" requires the administrator to furnish to the participant, and the administrator does not produce the information within thirty days of the participant's. 29 U.S.C. § 1132(c)(1).[6]  This provision is penal and, as such, is to be narrowly construed. Kollman v. Hewitt Assocs., LLC, 487 F.3d 139, 144, 146 (3d Cir. 2007) (citing Groves v. Modified Ret. Plan, 803 F.2d 109, 118 (3d Cir. 1986)).  In order to prevail on a claim under § 1132(c)(1), the plaintiff must produce evidence of a written request that "provide[d] . . . clear notice to a reasonable plan administrator of the documents which, given the context of the request, should be provided." Kollman, 487 F.3d at 146. In addition, the plaintiff must identify a provision in the subchapter that "specifically require[d]" the administrator to furnish the documents that the

---

[6]In pertinent part, § 1132(c)(1) states:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1).

participant requested. <u>Groves</u>, 803 F.2d at 116.

Here, Plaintiff asserts that Defendant violated § 1132(c)(1) when it failed to produce the 1996 Plan within thirty days of his July 2008 request and all subsequent requests. (<u>See</u> N.T. 7/13/11, at 11-12.) However, the only July 2008 request in the record is a handwritten note from Plaintiff, stating that "he would like to be able to review the files of the plan." (Appx. 21.) We conclude as a matter of law that this imprecise handwritten note did not provide Defendant with "clear notice" that Plaintiff wanted a copy of the 1996 Plan, much less that he wanted Defendant to produce the 1996 Plan to him. Indeed, the first and only written request in the record that even arguably requested the production of the 1996 Plan was Plaintiff's counsel's October 17, 2008 letter, which requested that Defendant "provide . . . a copy of <u>every</u> version of the subject Pension Plan and <u>all</u> amendments thereto from its inception to the present," and even that request was undeniably vague, in that it did not specifically target the 1996 Plan, and plainly overbroad. (Appx. 81.) Unfortunately, Plaintiff does not address the adequacy of any of his written requests under the "clear notice" test. <u>See</u> <u>Kollman</u>, 487 F.3d at 146. Without any such advocacy, and in the absence of a written request in the summary judgment record that specifically requests the 1996 Plan, we conclude that Plaintiff has not met his burden on summary judgment of pointing to evidence of a written request that was sufficiently clear to trigger Defendant's production obligations under § 1332(c)(1).

Even more fundamentally, we conclude that Plaintiff has failed to meet his burden of establishing the legitimacy of his § 1132(c)(1) claim in the face of Defendant's summary judgment motion, because he has not even attempted to point to an ERISA provision that required Defendant, in 2008, to produce the 1996 Plan, much less required Defendant to produce "every version of [the plan] and all amendments thereto from [the plan's] inception," as he requested in October 2008.

10

(Appx. 81.)  As noted above, § 1132(c)(1) only requires that an administrator produce information that it is required "by the subchapter to produce."  29 U.S.C.  § 1132(c)(1).  We pressed Plaintiff's counsel at oral argument to identify an applicable provision in the subchapter, and he was unable to do so.   (N.T. 7/13/11, at 15-16.)

Moreover, the primary subchapter provision that governs an administrator's duty to provide plan documents to plan participants upon request is § 1024(b)(4).  That provision states that an

> administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C.  § 1024(b)(4) (emphasis added).   Section 1024(b)(4), by its plain terms, requires that the administrator, upon written request, provide only "the latest updated summary plan description." Id. (emphasis added.)  As such, "outdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide to plan participants under § 1024(b)(4)."  Shields v. Local 705 Int'l Bhd. of Teamsters Pension Plan, 188 F.3d 895, 903 (7th Cir. 1999) (quotation omitted) (emphasis added).  Accordingly, § 1024(b)(4) did not require Defendant to produce any prior versions of the pension plan, including the 1996 Plan.  See Femino v. NFA Corp., Civ. A. No. 05-019, 2006 WL 1997626, at *7 (D.R.I. July 17, 2006) (finding that administrator did not violate § 1132(c) by failing to produce 1995 summary plan description instead of most recent summary plan description); Shields, 188 F.3d at 903 (affirming district court finding that administrator did not violate § 1132(c) in conjunction with § 1024(b)(4) by failing to provide outdated versions of plaintiff's pension plan).

Under these circumstances, we conclude that Plaintiff has not met his burden of pointing to

evidence in the record that could support a violation of § 1132(c)(1), both because he does not clearly identify a written request that would trigger liability under § 1132(c)(1), and because he cites no law that required Defendant, in 2008, to produce the outdated 1996 Plan to him. We therefore enter judgment in Defendant's favor on Plaintiff's § 1132(c)(1) claim.

### B.    ERISA Claim Under § 1132(a)(1)(B) to Recover Benefits

Plaintiff's ERISA claim for improper denial of his benefit arises under 29 U.S.C. § 1132(a)(1)(B), which authorizes a participant to bring an action for arbitrary and capricious termination of benefits, and 29 U.S.C. § 1053(a), which provides that certain retirement benefits cannot be forfeited by a plan participant.

### 1.    Arbitrary and Capricious Denial

Under § 1132(a)(1)(B), a participant or beneficiary of an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "Where, as here, the plan gives the administrator discretionary authority, we review the administrator's exercise of that authority under an 'arbitrary and capricious' standard . . . ."[7] Vitale v. Latrobe Area Hosp., 420 F.3d 278, 281-82 (3d Cir. 2005) (citations omitted). Under that standard, the court may overturn an administrator's decision only if the decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011) (quotation omitted). Where the administrator must interpret

_____

[7]The Plan in the instant case provides that the Board of Administration "shall have authority to control and manage the operation and administration of the Plan" and "shall have the right to decide in their sole and exclusive discretion all questions arising from or respecting the interpretation, application or administration of the Plan." (Appx. 123 (1996 Plan); Appx. 244 (2002 Plan).)

12

the terms of a plan, it is bound by the plain language of the plan document.  Epright v. Environmental Resources Management, Inc. Health & Welfare Plan, 81 F.3d 335, 339 (3d Cir. 996) (citation omitted).

Here, as noted above, Plaintiff argues that the Defendant improperly denied him Supplemental Pension benefits based on his receipt of Social Security disability benefits.  However, the plain terms of § 3.04 in both the 1996 Plan and the 2002 Plan provide that Plaintiff's Supplemental Pension payments were to be discontinued when he became "entitled to a disability pension from social security." (Appx. 106, 224.) Under these circumstances, we cannot possibly conclude that Defendant's decision to discontinue Plaintiff's Supplemental Pension payments was arbitrary and capricious; to the contrary, as Defendant points out, that result was dictated by the plain language of the operative Plan.  Accordingly, we deny Plaintiff's Motion insofar as it asks us to find Defendant to have acted arbitrarily and capriciously in denying benefits, and we conclude to the contrary that the undisputed record evidence establishes that Defendant's denial of benefits was neither arbitrary nor capricious.

**2.     Denial of Benefits as Violative of the Nonforfeitability Provisions**

Plaintiff argues, in the alternative, that Defendant's denial of his benefits violated ERISA's nonforfeitability provision, which, in his view, prohibited Defendant from reducing his vested Supplemental Pension benefits on account of his receipt of Social Security disability benefits. "[T]he concept[] of . . . nonforfeitable rights [is] critical to the ERISA scheme." Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 510 (1981) (citations omitted.).  Thus, ERISA provides that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a) (the

13

"nonforfeitability provision").  In arguing that the termination of his benefits violated the nonforfeitability provision, Plaintiff relies exclusively on a case that is no longer good law, Utility Workers Union of America v. Consumers Power Co., 637 F.2d 1082 (6th Cir. 1981) (holding that ERISA prohibits the reduction of pension benefits by the amount that a retiree receives in workers' compensation benefits), vacated and remanded, 451 U.S. 1041 (1981), rev'd, 663 F.2d 1074 (6th Cir. 1981).[8]

Under the controlling caselaw, Plaintiff's claim of nonforfeitability is clearly meritless.  In Alessi, the United States Supreme Court specifically considered whether pension offsets for Social Security payments and/or workers compensation benefits violated ERISA's nonforfeitability provision, and concluded that they did not.  451 U.S. at 516-17.  As the Supreme Court made clear, the nonforfeitability provision ensures that a retiree's overall right to a pension is protected, but does not guarantee a pension in a particular amount.  Id. at 512 (citing Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 372-73 (1980)).  The Court further noted that Congress, in ERISA, did not prohibit "integration," a method by which "benefit levels are determined by combining pension funds with other income streams available to the retired employees," and "expressly preserved the option of pension fund integration with benefits available under . . . the Social Security Act, 42 U.S.C. § 4016."  Id. at 514 (citing 29 U.S.C. § 1054(b)(1)(i)) (additional citations omitted).  The Alessi Court further clarified that such approved integration applies to all  Social Security benefits, without distinguishing between benefits due to disability and wages lost due to retirement.  Id. at 519-20.  Under this clear Supreme Court precedent, Plaintiff is simply incorrect that ERISA's

---

[8]When asked at oral argument to cite another case to support Plaintiff's nonforfeitability argument, Plaintiff's counsel was unable to do so.  (N.T. 7/13/11, at 35-36.)

nonforfeitability provision prohibits Defendant from offsetting his Social Security disability payment from his Supplemental Pension payment.

In sum, based on the undisputed record evidence and under the controlling law, we reject both Plaintiff's argument that Defendant's denial of his benefits was arbitrary and capricious, and his argument that the denial violated ERISA's nonforfeitability provision. Moreover, because the summary judgment record establishes that the denial of his benefits was fully consistent with the terms of the Pension Plan and with Defendant's obligations under ERISA's nonforfeitability provision, we grant summary judgment in Defendant's favor on Plaintiff's claim pursuant to § 1132(a)(1)(B) to recover his Supplemental Pension benefits.

**C.    ERISA Claim for Breach of Fiduciary Duty**

In connection with his breach of fiduciary duty claim, Plaintiff argues in his motion that the record evidence conclusively establishes that Defendant did not notify him at the time he opted for early retirement that his Supplemental Pension benefits would be suspended if he began receiving Social Security disability benefits and that he was instead led to believe that there was no such limitation. Defendant argues in its cross-motion that the record evidence establishes that Plaintiff was notified, repeatedly, of the limitation on his Supplemental Pension payments.[9]

---

[9]Defendant moved, in its written summary judgment motion, for judgment in its favor on "all" of Plaintiff's claims, but it did not directly address Plaintiff's fiduciary duty claim. In fairness to Defendant, the breach of fiduciary duty claim was not central to Plaintiff's Complaint or particularly well-defined in Plaintiff's own summary judgment motion. The claim is, however, encompassed in Count II of the Complaint, which states "The decision by Defendant that denied Plaintiff of the rights and benefits due Plaintiff under his Early Retirement Plan was arbitrary, illegal, capricious, unreasonable, and not made in good faith and is a breach of Defendant's fiduciary duty owned [stet] to Plaintiff . . . ." (Compl. ¶ 32 (emphasis added).) In any event, Defendant clarified at oral argument that it was, in fact, moving for judgment in its favor on the breach of fiduciary duty claim. (N.T. 7/13/11, at 23-24.)

15

Plaintiff's breach of fiduciary duty claim under ERISA arises under § 1132(a)(3), which "acts as a 'safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy.'" Jordan v. Federal Express Corp., 161 F.3d 1005, 1012 (3d Cir. 1997) (quoting Varity Corp. v. Howe, 516 U.S. 489, 512 (1996)). The United States Supreme Court has charged lower courts with defining the "contours of fiduciary duties" under ERISA. Harte v. Bethlehem Steel Corp., 214 F.3d 446, 452 (3d Cir. 2000) (citing Varity Corp., 516 U.S. at 497). Pursuant to this charge, the United States Court of Appeals for the Third Circuit has "held that administrators generally have a fiduciary duty 'not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures.'" Harte, 214 F.3d at 452 (quoting In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig., 57 F.3d 1255, 1264 (3d Cir. 1995)).[10]

To establish a breach of fiduciary duty claim, "'a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation [or omission] on the part of the defendant; (3) the materiality of that misrepresentation [or omission]; and (4) detrimental reliance by the plaintiff on the misrepresentation [or omission].'" Araujo v. Draft Foods Global, Inc., 387 Fed. App'x 212, 217 (3d Cir. 2010) (quoting Daniels v. Thomas & Betts Corp. 263 F.3d 66, 73 (3d Cir. 2001)). In situations

---

[10]In Harte, the Third Circuit considered a plaintiff's breach of fiduciary duty claim against an administrator, which alleged that the administrator had failed to advise the plaintiff that plaintiff's two-year break in service due to a disability would constitute a break in "continuous" service for pension purposes, thereby disqualifying him from receiving a particular level of benefits under his retirement plan. The court stated that the administrator "may be held liable for breach of fiduciary duty" where the plaintiff "might predictably and reasonably presume, after reading the pertinent part of the plan, that he is still employed." 214 F.3d at 453.

involving omissions, the ERISA fiduciary has an "affirmative duty to speak when [he] knows that silence might be harmful." Harte, 214 F.3d at 452 (quoting Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993)). This duty "extends to 'those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection.'" Id. (quoting Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc., 93 F.3d 1171, 1182 (3d Cir. 1996)). A fiduciary's omission is therefore material "if 'there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision.'" Harte, 214 F.3d at 452 (quoting Unisys, 57 F.3d at 1264). Where "reasonable minds can differ on whether a misleading statement or omission would affect a reasonable employee's retirement decision," that issue is one for the fact-finder. Id. (citing Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993)).

Here, neither party disputes that Defendant is an ERISA fiduciary, which can be subject to a breach of fiduciary claim. There are, however, genuine issues of material fact as to whether there was an omission that is, whether Defendant failed to advise Plaintiff, at the time he accepted early retirement, that his Supplemental Pension benefits would be terminated if he began receiving Social Security Disability benefits; whether that alleged omission was material; and whether Plaintiff detrimentally relied on that omission. The summary judgment record contains Plaintiff's deposition testimony that no one sat down with him to go over his Pension application when he filled out the application, and no one gave him a copy of the Pension Plan when he opted to accept early retirement. (Appx. 356-57.) It also contains Plaintiff's testimony that he did not know at the time he opted for early retirement that his receipt of Social Security disability benefits would result in the early termination of his Supplemental Pension payments. (Appx. 360.) Plaintiff further he testified

17

at his deposition that, when he was considering early retirement, it was important to him not only that he would be able to collect both Pension and Supplemental Pension payments, but also that he would be able to work to supplement that pension income, and that he decided to retire early precisely because all of those income streams would be available to him. (See Appx. 357 ("I retired because they presented to me an opportunity where I could retire early and also offered me the ability, while retired, to work.");[11] Appx. 365; see also Appx. 361-62 (testifying that he "probably" would not have retired if he had known that his Supplemental Pension payment could be terminated because he was receiving Social Security disability benefits).

On the other hand, the summary judgment record also contains contrary evidence. Specifically, the record contains evidence that that Plaintiff was, in fact, provided with Plan documents when he retired and that Defendant routinely sends a Summary Plan Description to each active Plan participant every five years. (See Obuchowicz Decl., dated 1/11/11, at ¶ 11 (stating that Plaintiff "would have received a Retiree Summary Plan Description" at his retirement appointment); id. at ¶ 5.) There is also evidence that Plaintiff was notified that he could not simultaneously collect a Social Security disability check and his Supplemental Pension payments in the "Right to Receive" cards that Defendant mailed to Plaintiff annually. (Appx. 47-48.) Defendant emphasizes that Plaintiff falsely completed the Right to Receive cards on at least three occasions, because he represented by signing the cards that he was not receiving Social Security disability benefits when, in fact, he was. (Id.)

Under these circumstances, we conclude that there are genuine issues of material fact that

---

[11]Indeed, Plaintiff testified that, for the first five years of his retirement, he continued to work to supplement his pension income. (Appx. 358-59.)

prevent the entry of summary judgment in either party's favor on the breach of fiduciary duty claim.[12]

We therefore deny both parties' summary judgment motions insofar as they pertain to the breach of

fiduciary duty claim.

### D.    American with Disabilities Act Claim

Plaintiff also claims that Defendant's denial of his Supplemental Pension benefits violates

§ 1211(a) of the ADA, which provides in pertinent part as follows:

> No covered entity shall discriminate against a qualified individual
> with a disability because of the disability of such individual in regard
> to employment compensation, job training, and other terms,
> conditions, and privileges of employment.

42 U.S.C. § 12112(a).   According to Plaintiff, Defendant's denial of his benefits under his

Supplemental Pension denies him equal compensation on account of his disability in violation of

§ 12112(a), because non-disabled Pension Plan participants are permitted to receive income from

"three sources," i.e., (1) the Early Retirement Pension Plan Payment, (2) the Carpenters

Supplemental payment, and (3) income derived from employment both inside and outside the

construction industry, while disabled participants are not only denied their Supplemental Pension

payments, but also lose their ability to earn work income.[13]

---

[12]This case is similar to Jordan v. Federal Express Corp., 116 F.3d 1005 (3d Cir. 1997), in which the court found that there was a genuine issue of material fact as to whether an ERISA plan administrator had breached his fiduciary duty to the plaintiff/retiree, where the plaintiff was not advised until after his retirement and subsequent divorce that he could not transfer his plan benefits to his new wife and that the plan was irrevocable. Id. at 1008-09, 1017. In that case, the irrevocability and transfer restrictions were in the plan documents, but plaintiff had never received or requested a complete copy of the plan. Id. at 1016.

[13]Plaintiff also asserts that his denial of benefits under these circumstances violated § 12132 of the ADA, which provides as follows:

> [N]o qualified individual with a disability shall, by reason of such

19

Plaintiff's argument is meritless. In Leheny v. City of Pittsburgh, 183 F.3d 220 (3d Cir. 1999), the Third Circuit made clear that there is no ADA violation where "every employee is offered the same plan, regardless of that employee's contemporary or future disability."[14] Id. at 230; see also McKnight v. General Motors Corp., 550 F.3d 519, 529 (6th Cir. 2008) (concluding that benefit plan that provided for a reduction in retirees' supplemental benefits if they became eligible for Social Security disability payments did not violate the ADA because "each plaintiff had equal access to the same benefit plan; thus, they . . . received equal treatment from [their employer].") Here, Plaintiff has presented no evidence that employees are -- or were at the time he retired -- offered different plans based on whether or not they were disabled. To the contrary, the record evidence appears to

> disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

However, as Defendant correctly points out, Plaintiff cannot take advantage of § 12132, because that provision only applies to "public entities," and the ADA defines "public entity" as "any State or States or local government; and the National Railroad Passenger Corporation, and any commuter authority . . . ." 42 U.S.C. § 12131(a). Because Defendant is not a public entity, we enter judgment in Defendant's favor insofar as Plaintiff claims that the denial of benefits violated § 12132.

[14]Leheny involved an early retirement plan for Pittsburgh police officers. Under the plan, officers of a certain age, with years of service that met a certain threshold, were offered early retirement with a pension equal to 75% of their average month pay. Disabled officers, who were entitled to workers compensation, could opt instead to collect 50% of their average monthly pay along with 66 2/3 % of their workers' compensation benefits. The disabled officers contended that this plan violated the ADA, because "non-disabled retirees [we]re able to obtain new employment for any amount of compensation, [while the disabled officers], because of their disability . . . [were] limited to the 66 2/3% workers compensation benefits they receive." 183 F.3d at 229. The Third Circuit rejected that argument, noting that its precedent dictated that employees receive "'equal treatment'" when they are given the opportunity to join the same plan with the same schedule of coverage. Id. at 230 (quoting Ford v. Schering-Plough Corp., 145 F.3d 601, 608 (3d Cir. 1998)). Accordingly, "'[s]o long as every employee is offered the same plan regardless of that employee's contemporary or future disability status, then no discrimination has occurred even if the plan offers different coverage [to employees with disabilities]." Id. (quoting Ford, 145 F.3d at 608.) The Leheny court therefore found no ADA violation on the facts of that case. Id.

show just the opposite, i.e., that the 1996 Plan and the 2002 Plan were standard plans that were offered to every employee in the relevant time periods.

Accordingly, Plaintiff has not established a violation of the ADA. We therefore grant Defendant's Motion insofar as it seeks judgment in its favor on the ADA claim, and deny Plaintiff's Motion for Summary Judgment insofar as it pertains to that claim.

## IV. CONCLUSION

For the foregoing reasons, we deny Plaintiff's Motion for Summary Judgment in its entirety and grant Defendant's Motion for Summary Judgment insofar as it seeks judgment in its favor on Plaintiff's claim that Defendant violated § 1132(c)(1) of ERISA by failing to produce a copy of the 1996 Plan in a timely fashion, the claim that Defendant arbitrarily and capriciously denied Plaintiff benefits under the Plan documents or denied benefits in violation of ERISA's non-forfeitability provision, and the ADA claim. At the same time, we deny Defendant's Motion insofar as it seeks dismissal of Plaintiff's breach of fiduciary duty claim, because there are genuine issues of material fact as to that claim.

An appropriate Order follows.

BY THE COURT:

John R. Padova, J.

21