IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK G. FISCHER, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CARPENTERS PENSION AND ANNUITY | : | |
| FUND OF PHILADELPHIA AND | : | |
| VICINITY | : | NO. 10-3048 |

## MEMORANDUM

**Padova, J.**                                                    **February 23, 2012**

On December 12, 2011, we held a nonjury trial on Plaintiff Frederick G. Fischer, Jr.'s claim that

Defendant Carpenters Pension and Annuity Fund of Philadelphia and Vicinity breached its fiduciary

duty to him under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§ 1001 et seq., when it failed to inform him at the time he opted for early retirement that his

Supplemental Pension payments would be terminated if he began collecting Social Security

Disability benefits.  The parties filed Post-Trial Findings of Fact and Conclusions of Law on January

17, 2012.  For the following reasons, we conclude that the statute of limitations in 29 U.S.C. § 1113

bars Plaintiff's claim and we therefore enter judgment in favor of Defendant and against Plaintiff.

## I.    FINDINGS OF FACT

1.  Plaintiff is a carpenter, who joined the joined the Carpenters' Union in 1965 and worked

for more than 30 years as a union member.  (N.T. 12/12/11 ("N.T."), at 15, 18.)  Plaintiff is now

retired and is a participant in the Carpenters Pension and Annuity Fund of Philadelphia and Vicinity,

which is the Defendant in this action.

2.  In the Spring of 1999, when Plaintiff was 52 years old, he learned from a supervisor at his

place of employment that the retirement age for union workers with at least 30 years of service had

been lowered from 55 to 52.  (Id. at 18.)  Plaintiff thereafter called the Carpenters Health and

Welfare Office and set up an appointment to discuss retirement.  (Id. at 17-18.)

3.  Plaintiff and his wife attended a retirement interview at the Health and Welfare Office on May 5, 1999. (Id. at 19, 21.) Plaintiff informed Defendant's employee who conducted the interview, Agnes Bricker, that he was interested in retiring.  (Id. at 20, 50-51, 114.)  Ms. Bricker advised Plaintiff of the amounts he would receive in pension payments on a monthly basis.  (Id. at 17, 56; Ex. D-6.)  She also advised him that he would be able to work one week each month while continuing to collect his pension.  (N.T. at 17.)

4.  During the interview, Plaintiff filled out and signed a pension application.  (Id. at 20;  Ex. D-4.)  In the application, Plaintiff opted for an Early Retirement Pension, with a 100% Joint and Survivor Benefit for his wife.  (Ex. D-4.)

5.  Under his chosen pension option, Plaintiff was eligible to receive a monthly payment of $3,260.28, which was comprised of both an Early Retirement Pension payment ($1507.82) and a Supplemental Pension payment ($1752.46), the latter of which would ordinarily be paid until he reached the age of 62 and became entitled to receive Social Security.  (See Ex. D-6.)

6.  During the retirement interview, Plaintiff also signed a paper entitled "Pension and Health and Welfare Regulations, Governing Participants Applying for Retirement with the Carpenters Pension Plan" (the "Pension Regulations Notice").  (N.T. at 23; see Ex. P-2.)  The Pension Regulations Notice advised Plaintiff that, upon retirement, he would not be permitted to work in the construction industry more than 40 hours per month.  (N.T. at 24; see Ex. P-2.)  It also advised him that his Supplemental Pension payment would be permanently discontinued if he violated that condition by working more than 40 hours in the construction industry in any given month.  (N.T. at 26; see Ex. P-2.)

2

7.  Plaintiff was not advised at the May 5, 1999 meeting that, if he began receiving Social Security Disability payments in the future, while he was still receiving his Supplemental Pension payment, his Supplemental Pension payment would be terminated.  (N.T. at 27.)  According to Plaintiff, he therefore expected that, if he were ever to become disabled, his Supplemental Pension payments would nevertheless continue until he reached the age of 62 and began receiving Social Security.  (Id. at 29, 59-60.)

8.  Plaintiff requested a copy of the Carpenters Pension and Annuity Plan of Philadelphia & Vicinity (the "Pension Plan") at his retirement meeting, but it was not given to him.  (Id. at 34.)  The plain terms of the Pension Plan in effect at that time provided that Plaintiff's Supplemental Pension payments would be discontinued if he became eligible for a disability pension from Social Security. (Ex. D-1, at § 3.04.)

9.  Plaintiff testified at trial that he would not have opted for early retirement if he had known that he would give up his Supplemental Pension payments if he became disabled and began receiving Social Security Disability. (N.T. at 29-30.)  According to Plaintiff, it was important for him to know exactly how much money he would be receiving in retirement, because he needed to know that it would be sufficient to support him and his wife.  (Id. at 28.)  In calculating the money he would receive in retirement, Plaintiff considered not only the Early Retirement Pension payment and the Supplemental Pension payment, but also the amount that he could earn by working up to 40 hours per month.  (Id. at 28-29.)  Plaintiff testified that he would not have retired when he did if he had understood that, upon becoming disabled, he would lose not only his ability to earn extra money by working, but also his Supplemental Pension payment.  (See id. at 29-30.)

10.  By the conclusion of the meeting, based on the information that he had received at the

meeting, Plaintiff decided to start early retirement on June 1, 1999, and submitted a completed Pension Application to that effect to Ms. Bricker. (Id. at 32.) Plaintiff began receiving monthly pension checks beginning in June of 1999. (See id.)

11. Approximately five years later, in July 2004, Plaintiff became eligible to receive Social Security Disability benefits of $1774.00 per month, due to his suffering from Post-Traumatic Stress Disorder. (Ex. D-16; N.T. at 11.) He began receiving those benefits, and was paid back benefits dating back to July 2004, in November 2004. (Ex. D-16.)

12. In 2005, 2006 and 2007, Plaintiff received by mail at his home, and completed and returned to Defendant, a "Certificate of Right to Receive Pension." (Exs. D-17, D-22; N.T. at 69-70, 79-80.) By signing these Certificates, Plaintiff represented that he "ha[d] not and [was] not receiving a Social Security Disability Benefit Check while receiving (if applicable) [his] Carpenter Supplemental Payment." (Exs. D-17, D-22; see N.T. at 70.)

13. In both 2003 and 2007, Defendant provided a list of retirees and their addresses to a printer, which then mailed out updated Retiree Reference books to all retirees under the Pension Plan. (See N.T. at 186-87, 212-13, 165-66.) Both the 2003 and 2007 Retiree Reference books included information that a retiree's Supplemental Pension payments would terminate if he was granted a Social Security Disability award. (See Exs. D-11 at 33, D-20 at 62-63.) The addresses provided to the printer were those in Defendant's computerized database, and Plaintiff's address in that database was the address at which Plaintiff resided at the time and still resides. (See N.T. at 57, 213-15.) Plaintiff nevertheless testified that he did not receive either book (N.T. at 78), although he admitted to receiving a number of other items that were mailed to his home address. (See, e.g., id. at 61, 79-80, 84.) The return address on the envelopes in which the books were mailed was

4

Defendant's address, and when envelopes were returned to Defendant, Defendant's regular practice was to conduct research to determine the retiree's proper address.  (Id. at 214.)  Defendant's practice was also to keep any returned envelopes in a retiree's pension file, and there are no returned envelopes in Plaintiff's file.  (Id. at 221-23.)

14.  On May 9, 2008, Defendant sent a letter to Plaintiff stating that it had "been recently informed that [Plaintiff was] receiving a Social Security Disability Award."  (Ex. D-23.)  Defendant requested that Plaintiff send it a copy of his award letter, along with the date he first became eligible to receive the award.  (Id.)

15.  By letter dated June 25, 2008, Defendant notified Plaintiff that his Supplemental Pension benefit was terminated.  (Ex. D-25.)  Defendant quoted in the letter the language of Section 3.04 of the Pension Plan, which unequivocally stated that a participant's eligibility to receive Supplemental Pension payments ends when the participant "becomes entitled to a disability pension from Social Security."  (Id. at 3.)

16.  Defendant further advised Plaintiff in the June 25, 2008 letter that it had overpaid him by $82,120.98, which was the amount that the Pension Plan had paid him in Supplemental Pension payments between July 2004 and June 2008.  (Id. at 1.)  Defendant stated that it would offset further pension payments in full until it recouped the amount of the overpayment.  (Id. at 2.)

17.  Plaintiff appealed Defendant's determinations that he was no longer entitled to Supplemental Pension payments and that he had been overpaid for such benefits.  (See Ex. P-4.)  However, the Pension Plan's Board of Trustees denied Plaintiff's appeal.

18.  Plaintiff commenced the instant action on June 23, 2010.  He asserted four claims in his Complaint, including claims that Defendant had improperly denied him benefits under the terms of

the Pension Plan in violation of 29 U.S.C. § 1132(a)(1)(B); that Defendant had failed to produce

Pension Plan documents to him upon request, in violation of 29 U.S.C. §1132(c)(1); and that

Defendant had breached its fiduciary duty to him by failing to advise him at the time that he opted

for early retirement that it would discontinue his Supplemental Pension payments if he began

collecting Social Security Disability, in violation of 29 U.S.C. § 1132(a)(3).

19.   On August 5, 2011, on Defendant's motion, we granted summary judgment in

Defendant's favor on all of Plaintiff's claims except the breach of fiduciary duty claim, which we

found to present genuine issues of material fact.  See Aug. 5, 2011 Mem. and Order, Docket Nos.

26 and 27.

20.   In Defendant's amended pretrial memorandum, filed on December 9, 2011, Defendant

argued for the first time that Plaintiff's breach of fiduciary duty claim was barred by the six-year

statute of limitations in 29 U.S.C. § 1113(1).  See Def.'s Am. Pretrial Mem., Docket No. 37, at 8-9.

Defendant explained to the Court that it had not raised this issue earlier – and, in fact, had not raised

the statute of limitations as an affirmative defense in its Answer to the Complaint – because it had

not understood Plaintiff's Complaint to contain a breach of fiduciary duty claim.

21.   We held a bench trial on the breach of fiduciary duty claim on December 12, 2011.

22.   Following trial, by agreement of the parties, we issued an Order amending Plaintiff's

Complaint to more clearly assert a claim that Defendant "breached its fiduciary duty under [ERISA]

by failing to notify Plaintiff at the time he opted for early retirement that his Supplemental Pension

benefits would be suspended if he began receiving Social Security disability benefits," and amending

Defendant's Answer to include the affirmative defense of statute of limitations.  Jan. 13, 2012 Ord.,

Docket No. 44.

6

## II.  CONCLUSIONS OF LAW

Upon consideration of Plaintiff's breach of fiduciary duty claim and the statute of limitations defense, we make the following conclusions of law.

1.  Defendant is a trust fund established under 29 U.S.C. § 186(c)(5), as well as a multiemployer plan and employee benefit plan under ERISA, 29 U.S.C. §§ 1002(37),(2) and (3).

2.  Plaintiff is a participant in the Pension Plan within the meaning of ERISA, 29 U.S.C. §§ 1002(7), 1132(a)(3).

3.  An ERISA breach of fiduciary duty claim arises under 29 U.S.C. § 1132(a)(3), which "acts as a 'safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy.'" Jordan v. Fed. Express Corp., 116 F.3d 1005, 1012 (3d Cir. 1997) (quoting Varity Corp. v. Howe, 516 U.S. 489, 512 (1996)).

4.  The United States Court of Appeals for the Third Circuit has "held that administrators generally have a fiduciary duty 'not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures.'" Harte v. Bethlehem Steel Corp., 214 F.3d 446, 452 (3d Cir. 2000) (quoting In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 57 F.3d 1255, 1264 (3d Cir. 1995)).

5.  To prove a breach of fiduciary duty, "'a plaintiff must establish . . . (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation [or omission] on the part of the defendant; (3) the materiality of that misrepresentation [or omission]; and (4) detrimental reliance by the plaintiff on the misrepresentation [or omission].'" Araujo v. Kraft Foods Global, Inc., 387 F. App'x 212, 217 (3d Cir. 2010) (quoting Daniels v. Thomas & Betts Corp. 263 F.3d 66, 73 (3d Cir. 2001)).

6.   The statute of limitations for an ERISA breach of fiduciary claims is set forth in 29

U.S.C. § 1113, which provides as follows:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. "'This section thus creates a general six year statute of limitations, shortened to

three years in cases where the plaintiff has actual knowledge of the breach, and potentially extended

to six years from the date of discovery in cases involving fraud or concealment.'" Ranke v. Sanofi-

Synthelabo Inc., 436 F.3d 197, 201 (3d Cir. 2006) (quoting Kurz v. Phila. Elec. Co., 96 F.3d 1544,

1551 (3d Cir. 1996)).

7.   In the instant case, Plaintiff alleges that Defendant breached its fiduciary duty to him by

materially misrepresenting the terms of the Pension Plan before he opted for early retirement and

further alleges that he detrimentally relied on Defendant's misinformation insofar as he opted for

early retirement when he otherwise would have continued working.  Under this theory of liability,

Defendant's breach of fiduciary duty occurred in May of 1999, when it misadvised him as to the

terms of the Pension Plan, and Plaintiff's claim accrued when Plaintiff relied on Defendant's

misinformation to his detriment by retiring effective June 1, 1999.  See Ranke, 436 F.3d at 202

8

("'[A]ny breach that may have occurred was completed, and a claim based thereon accrued, no later than the date upon which the employee relied to his detriment on the misrepresentations.'" (quoting In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 242 F.3d 497, 505-06 (3d Cir. 2001) ("Unisys III")); Keen v. Lockheed Martin Corp., 486 F. Supp. 2d 481, 492 (E.D. Pa. 2007) (noting that, in Unisys III, "the [six-year] limitations period began no later than the date on which plaintiffs retired, for this was the last date on which defendants could have made misrepresentations that induced plaintiffs to retire.")  In addition, to the extent that Plaintiff's claim is based on an alleged omission, Defendant's last opportunity to "cure" the omission was also June 1, 1999, because that was the last date on which Defendant could have averted Plaintiff's detrimental reliance on the incomplete information by advising him of the effect of any Social Security Disability award.  See Librizzi v. Children's Mem'l Med. Ctr., 134 F.3d 1302, 1307 (7th Cir. 1998) (explaining that, under § 1113,  an ERISA fiduciary can only "cure" a fiduciary violation based on an omission by fixing the omission before the participant relies upon on it, not by providing the participant with a remedy for the violation after the detrimental reliance has occurred); Olivo v. Elky, 646 F. Supp. 2d 95, 102 (D.D.C. 2009) (same) (citing Librizzi, 134 F.3d at 1307).  Thus, the six-year period under § 1113(1)(a) or (b) expired on June 1, 2005, six years after the effective date of Plaintiff's retirement, i.e., June 1, 1999, and over five years before Plaintiff commenced the instant action on June 23, 2010.[1]

---

[1]Plaintiff appears to advocate that we use a continuing violation theory in connection with the six-year statutory period, asserting that, from May 5, 1999 through June 25, 2008,  Defendant continued to breach its "ongoing fiduciary duty to inform Plaintiff of his retirement options."  Pl.'s Proposed Conclusions of Law, at ¶ D.  Plaintiff contends that "the date of the last action which constituted Defendant's breach of fiduciary duty was June 25, 2008, the date [on] which Defendant issued its determination to terminate [his] Carpenters' Supplemental Payment," and therefore suggests that the six-year statute of limitation did not begin to run until the date of this "last action."

8.  Relying on the alternative three-year statutory period in 29 U.S.C. § 1113(2), Plaintiff argues that he did not have "actual knowledge" that he would lose his Supplemental Pension if he became eligible for Social Security Disability benefits until he received Defendant's June 28, 2008 letter, which advised him that his Supplemental Pension payments were terminated.  See Pl.'s Proposed Findings of Fact at ¶ 21; Pl.'s Proposed Conclusion of Law at ¶ E.  He therefore suggests that the statute of limitations did not expire until three years later, on June 28, 2011, and that his June 23, 2010 commencement of this action was timely.  However, this argument ignores the fact that 29 U.S.C. § 1113 provides that the statute of limitations expires on the <u>earlier</u> of the expiration of the six-year period in § 1113(1) <u>or</u> the expiration of the three-year period in § 1113(2).  See <u>Ranke</u>, 436 F.3d at 201 (explaining that the three-year period in § 1113(2) only functions to shorten the otherwise applicable six-year statute of limitations period, not lengthen it) (citing <u>Kurz</u>, 96 F.3d at 1551).  Because the six-year period in § 1113(1) expired on June 1, 2005, before the asserted June 28, 2011 expiration of the three-year period in § 1113(2), it is the expiration of the six-year period that is operative here.

9.  Plaintiff also suggests that § 1113's "fraud or concealment" exception should apply here, because Defendant concealed its 1999 breach of fiduciary duty by failing to advise him for several years after he retired that his Supplemental Pension payments would be terminated if he began receiving Social Security Disability.  "To invoke [this] provision, however, the defendant must 'have

---

<u>Id.</u> at ¶ F.

However, the United States Court of Appeals for the Third Circuit has rejected this type of continuing violation theory, making clear that "mere continuations of the initial misrepresentation that led to [the Plaintiff's detrimental reliance]," do not "reset the clock" on the statute of limitations. <u>Ranke</u>, 436 F.3d at 203.  Accordingly, we reject Plaintiff's attempt to rely on a continuing violation theory to start the six-year clock in June of 2008.

taken affirmative steps to hide its breach of fiduciary duty.'" <u>Leckey v. Stefano</u>, 501 F.3d 212, 228 (3d Cir. 2007) (quoting <u>Ranke</u>, 436 F.3d at 204).  In addition, the plaintiff must establish that such affirmative steps prevented him "from discovering the alleged breach of duty before the statute of limitations expired." <u>Ranke</u>, 436 F.2d at 204.  Here, Plaintiff introduced no evidence at trial that Defendant took affirmative steps to conceal information from Plaintiff between its alleged breach in May 1999 and the June 1, 2005 expiration of the statute of limitations.[2]  Accordingly, we conclude that § 1113's fraud or concealment exception does not apply here.

10.  Under all of the above circumstances, the operative statute of limitations period is the six-year limitations period in § 1113(1).  That period expired on June 1, 2005, and Plaintiff's breach of fiduciary duty claim, which was not asserted until June 23, 2010, is barred by the statute of limitations.

## IV.   CONCLUSION

For the foregoing reasons, we conclude that Plaintiff's breach of fiduciary duty claim is barred by the statute of limitations.  We therefore enter judgment in favor of Defendant and against Plaintiff.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.

---

[2]Indeed, we have found quite to the contrary that, in 2003, Defendant mailed Plaintiff a Retiree Reference book, which included the information that Plaintiff's Supplemental Pension payments would be discontinued if he began receiving Social Security Disability.  <u>See supra</u> Findings of Fact ¶ 13.